IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**DANIEL ERIC SALLEY,**
        **Plaintiff,**

v.                                                        CIVIL ACTION NO. 3:15-CV-143
                                                                     (GROH)

**UNITED STATES OF AMERICA**
        **Defendant.**

## REPORT AND RECOMMENDATION

### I.    Introduction

Plaintiff is a federal inmate presently confined at United States Penitentiary I Coleman, ("USP Coleman I") in Sumterville, Florida, serving a term of life imprisonment, plus one hundred thirty-two (132) years[1] to run consecutively to the term of life imprisonment, which sentences were imposed on February 9, 2006, in the United States District Court for the Northern District of Illinois, following his convictions for: two violations of 18 U.S.C. §§ 1113 and 1114, attempted murder; five violations of 18 U.S.C. § 924(c)(1)(A)(ii), use of a firearm during a felony crime of violence; three violations of 18 U.S.C. § 111, assault; one violation of 18 U.S.C. § 1203, hostage taking; one violation of 18 U.S.C. 924(c)(1)(A)(ii), (C)(i), second or subsequent offense of use of a firearm during felony crime of violence; one violation of 18 U.S.C. § 922(g)(9), unlawful possession of a firearm subsequent to a misdemeanor conviction for domestic battery; and two violations of 18 U.S.C. § 2113(d), bank robbery. As part of the Judgment issued

---

[1] Plaintiff's life sentence was imposed for his two convictions for attempted murder. His additional thirteen sentences were imposed concurrently in part and consecutively in part for an aggregate additional sentence of 132 years to be served consecutively to his life sentence. N.D.Ill. 1:01-CR-750, ECF No. 189.

against Petitioner, criminal monetary penalties were assessed, including restitution which totaled three million, four hundred ninety-three thousand, one hundred eighty-two dollars and thirty-six cents ($3,493,182.36).  N.D.Ill. 1:01-CR-750, ECF No. 189 at 6.

Petitioner was previously confined at USP Hazelton in Bruceton Mills, West Virginia.  It was during his confinement at USP Hazelton that Plaintiff alleges he filed administrative remedies regarding the events which led to this civil action wherein Plaintiff seeks extraordinary financial damages.

## II.  Factual and Procedural History

On December 29, 2015, Plaintiff acting *pro se* filed the instant claim under the Federal Tort Claim Act ("FTCA").  ECF No. 1.  Plaintiff's first claim for relief alleges that while incarcerated at USP Hazelton, that, upon his direction, the United States Treasury Department sent him, via the Bureau of Prisons ("BOP") in excess of 550 billion dollars, which the BOP then prevented Plaintiff from accessing.  ECF No. 1 at 6[2].  Plaintiff's second claim for relief alleges that he is being falsely imprisoned by the BOP because in his case in the Northern District of Illinois he was found "incompetent to stand trial."  ECF No. 1 at 7.  Plaintiff's third claim for relief alleges that officials of the BOP in various locations including at USP Hazelton extorted $76,000 from Plaintiff and his daughter, which constituted an "assault" of Plaintiff and his daughter.  ECF No. 1 at 7.

For relief from his first claim, Plaintiff, seeks one trillion, nine hundred forty-six billion, six hundred ninety-one million, seven hundred sixty-six thousand, three hundred eighty-seven dollars and ninety-five cents ($1,946,691,766,387.95) in damages, which he asserts represents the five hundred fifty-five billion, sixty-eight million, four hundred ninety-four thousand, six hundred eighty-two dollars and thirty cents

---

[2] ECF Numbers cited herein refer to case number 3:15-CV-143 unless otherwise noted.

2

($555,068,494,682.30) which the U.S. Treasury sent to him, plus interest thereon. ECF No. 1 at 6, 9. For relief from his second claim, Plaintiff seeks three hundred fifty billion dollars ($350,000,000,000.00) and his immediate release from incarceration. ECF No. 1 at 6. For relief from his third claim, Plaintiff seeks seventy-six thousand dollars ($76,000), plus all expenses incurred from indictment through incarceration with the BOP. Id.

In support of his claims Plaintiff asserts that he "sent a Bill of Exchange and several receipts to the U.S. Treasury that . . . . [totaled] $555,068,494,682.30 [and that] [t]he monies were sent to the BOP to give to me in 2009 but, I was not told that the money arrived." ECF No. 1-1 at 1. Plaintiff alleges that although he filed administrative remedies regarding these claims when he was housed in USP Tucson[3], he failed to "put a sum certain in the claim." Id. at 2. According to Plaintiff, after being transferred to USP Hazelton on April 28, 2015, he filed Bureau of Prisons Form 9 ("BP-9") for administrative remedies on July 13, 2015, which form listed a sum certain for damages. ECF No. 1-1 at 2. Plaintiff asserts that he then filed a BP-10 form and a BP-11 form with the appropriate regional and central offices, seeking the same amount in damages sought herein, $1,946,691,766,387.95. Id. According to the documents submitted by Plaintiff, his claims filed while incarcerated at Hazelton[4] were rejected. On September 17, 2015,

---

[3] According to his own filings Plaintiff has been housed in the following institutions: Metropolitan Correction Center, Chicago, Illinois; USP Terre Haute, Terre Haute, Indiana; USP Coleman, Sumterville, Florida; FCI, Yazoo City, Mississippi; USP Pollock, Pollock, Louisiana; FCI Oakdale, Oakdale, Louisiana; USP Tucson, Tucson, Arizona; USP Hazelton, Bruceton Mills, West Virginia; and USP Florence, Florence, Colorado. ECF No. 1-4.

[4] Plaintiff filed four additional administrative remedy claims while housed at USP Tucson, all of which were rejected: (1) Remedy ID 803278-R2 was rejected on January 21, 2015, because Plaintiff submitted his request at the wrong level and because he failed to use the proper form [ECF No. 1-8]; (2) Remedy ID 802606-R1 was rejected on December 3, 2014, because Plaintiff failed to provide staff verification that he was not responsible for the untimely filing of his appeal [ECF No. 1-15]; (3) Remedy ID 802605-F1 was rejected on November 25, 2014, because Plaintiff did not attempt informal resolution prior to submission of the administrative remedy [ECF No. 1-17]; and (4) Remedy ID 802606-F1 was rejected on November 25, 2014, because Plaintiff did not attempt informal resolution prior to submission of the administrative remedy [ECF No. 1-19].

Remedy ID 835875-A1, was rejected because Plaintiff first had to file a BP-9 form through the institution.  ECF No. 1-3.  On September 18, 2015, Remedy ID 835876-A1, was also rejected because Plaintiff first had to file a BP-9 form through the institution. ECF No. 1-6.  Two months later Plaintiff filed his complaint in the instant action.  ECF No. 1.  On the same day he filed his complaint Plaintiff also filed a motion to proceed *in forma pauperis,* consent to collection of fees from his trust account, and his prisoner trust fund account statement.  ECF Nos. 2, 3, 4.  On January 5, 2016, Plaintiff was granted leave to proceed without prepayment of fees.  ECF No. 6.

### III.  Standard of Review

Because plaintiff is a prisoner seeking redress from the Government, the Court must review the complaint to determine whether it is frivolous or malicious.  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989)(Superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but

4

>also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, supra, at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's

5

obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570.  In Twombly, the Supreme Court found that "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

## IV.  Analysis

A review of the complaint conducted pursuant to 28 U.S.C. § 1915A(b), reveals that Plaintiff does not make a plausible claim in his complaint based on any cognizable legal authority and fails to present a claim upon which relief can be granted.

### A.  Plaintiff's First Ground For Relief

In his first ground for relief Plaintiff seeks nearly two trillion dollars in relief and interest, of which more than $555 billion was allegedly transferred to him from the United States Treasury, based upon Plaintiff's directive to the Treasury to do so.  According to the Congressional Budget Office, the Government's projected revenues for Fiscal Year 2017 are $3.4 trillion, projected outlays are $4.0 trillion and the projected deficit is $559 billion.  https://www.cbo.gov/topics/budget.  Plaintiff's claim that the U.S. Treasury remitted to him, based on his own directive, any amount, much less an amount equal to

nearly one sixth of the United States' total revenues is fantastical.  Plaintiff presents no facts or legal authority to even arguably support his claim.  It appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  This court cannot reasonably read the pleadings to state a valid claim on which the petitioner could prevail.

### B.     Plaintiff's Second Ground For Relief

In his second ground for relief Plaintiff seeks $350 billion and immediate release from incarceration, claiming that he is being falsely imprisoned.  Plaintiff claims that he was determined incompetent to stand trial in the Northern District of Illinois, that such order was never vacated, and thus he is a pre-trial detainee being held illegally.  ECF No. 1 at 7.

However, a review of the pleadings in Plaintiff's criminal case reveals that the district court found him "mentally incompetent to the extent that he is unable to assist properly in his defense," and thus the court ordered he be hospitalized for 90 days in an attempt to restore Plaintiff to competency.  N.D.Ill. 1:01-CR-750, ECF No. 66 at 1, 18.  Thereafter, on January 14, 2004, the district court found Plaintiff was "competent to stand trial."  N.D.Ill. 1:01-CR-750, ECF No. 96 at 1, 13.  Further, the docket for Plaintiff's criminal case shows that his trial commenced on October 5, 2005 and continued on October 6, 7, 11, 12, 17, 18, 19, 20, 24 and 25, 2005.  N.D.Ill. 1:01-CR-750, ECF Nos. 152, 155, 156, 160, 161, 162, 168, 169, 172 and 175.  On the final day of trial the jury returned a verdict of guilty upon all fifteen counts of the superseding indictment [N.D.Ill. 1:01-CR-750, ECF Nos. 177, 22].

Again, in his second claim for relief Plaintiff presents no facts or legal authority to

even arguably support his claim. It appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. This court cannot reasonably read the pleadings to state a valid claim on which the petitioner could prevail.

### C.  Plaintiff's Third Ground For Relief

In his third ground for relief Plaintiff seeks $76,000 in damages "plus all expenses [ ] incurred" from indictment through his current incarceration with BOP. Plaintiff claims that BOP officials extorted $76,000 from him and his daughter, Eunice D. Salley. ECF No. 1 at 7. In support of this claim, Plaintiff submitted among other documents a "Discipline Hearing Officer Report" ("discipline report") prepared by officials at USP Tucson and dated June 3, 2014, which states that Plaintiff was disciplined for, "[u]se of the mail for an illegal purpose; [g]iving money to, or receiving money from any person for the purpose of introducing contraband; [c]onducting a business." ECF No. 1-7. The discipline report concluded that Plaintiff was conducting two types of businesses while incarcerated and states that a:

> review of emails between inmate Salley and his daughter, Eunice Salley, indicate Mr. Salley is running a business outside of the facility, in which Ms. Salley is acting as the third party fulfilling requests/directives of inmate Salley and his/their "clients", collecting money from inmates and/or their families as compensation for services rendered, and sending proceeds from the business to inmate Salley and other inmates. . . . Other USP Tucson inmates involved in inmate Salley's enterprise were interviewed and they confirmed paying inmate Salley for legal work through Eunice Salley. . . . Inmate Salley was also interviewed and he admitted that his daughter is preparing tax returns for inmates.

ECF No. 1-7 at 2. Although Plaintiff's reasoning is unclear, it appears that Plaintiff alleges that he and his daughter were "assaulted" by being deprived of the income from

the two businesses—prisoner legal services and prisoner tax preparation—which he operated with his daughter's help while he was incarcerated. Plaintiff uses the word "extorted" to describe the "assault" upon him and his daughter, who notably is not a party to this litigation, but does not describe any facts which would support either claim.

It appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Plaintiff presents no facts regarding this claim other than the discipline report. Moreover, Plaintiff presents no legal authority to even arguably support his claim. Accordingly, this court cannot reasonably read the pleadings to state a valid claim on which the petitioner could prevail.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Complaint [ECF No. 1] be **DISMISSED WITH PREJUDICE**, based on Plaintiff's failure to state a claim upon which relief can be granted.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985); Wells v. Shriners Hosp., 109 F.3d 198 (4th

Cir. 1997).

    The Clerk of the Court is directed to send a copy of this Order to the Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

DATED:    June 28, 2017

                                           /s/ *Michael John Aloi*
                                           MICHAEL JOHN ALOI
                                           UNITED STATES MAGISTRATE JUDGE